## UNITED STATES ex rel. Walter BURGESS

v.

### A. T. RUNDLE, Sup't.

Misc. No. 69–263.

United States District Court
E. D. Pennsylvania.

Jan. 22, 1970.

Walter A. Burgess, in pro. per.

Richard A. Devlin, Asst. Dist. Atty., Montgomery County, for respondent.

### OPINION

HIGGINBOTHAM, District Judge.

On successive fall days, October 10th and 11th, 1967, relator Walter Burgess was found guilty by two juries of Burglary, Robbery, and Robbery-related of-

fenses as charged in bills of indictment Nos. 1004, 1005 (No. 131 June Term 1967), 1209, and 1211 (No. 185 June Term 1967). On December 29, 1967, Judge Robert Honeyman sentenced relator to concurrent two to ten year sentences and ordered him to make restitution to two robbery victims.

In the case of the conviction on bills of indictment Nos. 1004 and 1005 appeals were taken to the Court of Quarter Sessions, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court. In the case of the conviction on bills of indictment Nos. 1209 and 1211 appeals were set in motion, but were withdrawn as a result of the following hand-written letter from relator to his counsel, Herbert C. Nelson, which was filed in open court before Judge Honeyman on December 18, 1967:

"Dear Mr. Nelson—

"You represented me in the case in which the Commonwealth charged me with Burglary, Robbery Conspiracy, and violation of firearm act, No. 185 June Term 1967 (Abington case) [indictments No. 1209 and 1211].

"This was tried by a jury and Judge Honeyman on October 9 and 10, 1967.

"The jury found me guilty. My attorney advised the court that he would file motions for appeal.

"*I now advise my Lawyer that I do not care to appeal this case. I am satisfied with the manner in which the case was tried and with the jury's verdict.* [emphasis added].

"I do not want my attorney to proceed with motions for a new trial.

"I am requesting my attorney to ask Judge Honeyman to set a time for sentence in this case, and withdraw my motion for a new trial.

"Yours truly,
Walter Burgess"

Incorporating this letter into the record, Judge Honeyman ordered relator to be produced for sentencing on December 29, 1967.

Contrary to relator's assertion in his petition for writ of habeas corpus that he has filed no state court post-conviction petitions, he has filed numerous such petitions and Judge Honeyman has issued two opinions and several orders in response.

Relator here attacks his convictions alleging that as to indictments 1004 and 1005 his "identification took place without counsel being present, and relator was the only one in the lineup to choose from." As to indictments 1209 and 1211, relator alleges denial of due process of law because "the only evidence the Commonwealth has connecting relator with the commission of the offense is entirely after the fact." Relator's third point of attack on his convictions is best reproduced in his own words: "a plea of guilty or an admission after the verdict and before sentence, based upon trial counsel's statement to do otherwise, meant an extremely lengthy sentence, is not to be considered as voluntary, since such a plea or admission is based solely upon fear."

I shall deal with relator's three points seriatim.

■ First relator raises the problem which was before the United States Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). These two landmark cases teach us that when lineups or other pretrial identifications of a suspect are conducted in the absence of counsel for the suspect, later in-court identifications cannot be admitted "without first determining that they were not tainted by the illegal lineup but were of independent origin." Gilbert v. State of California, *supra*, 87 S.Ct. at p. 1956; and see United States v. Wade, *supra*, 87 S.Ct. at pp. 1939, 1940.

■ While I have my doubts that relator properly raised this issue in prior state proceedings (it is raised in his "Motion For New Trial, Nunc Pro Tunc") in a manner which would satisfy

28 U.S.C.A. § 2254(b), I have nevertheless carefully reviewed the entire transcript of relator's trial on indictments 1004 and 1005. It is completely clear to me that Mr. Charles E. Sprenkel's identification of relator was of *independent origin* and not at all tainted by any possible question of an illegal pretrial identification.

The following testimony is illuminating:

"Q: Did you ever see Walter Burgess [relator] before the day you were robbed?

"A: Oh, yes, he's a customer of mine.

*   *   *   *   *   *

"Q: Did he buy anything from you?

"A: Well, a week prior to that, [the robbery], on the 5th, he came in there and he purchased eighty-five dollars' worth of merchandise. (N.T., p. 20)

*   *   *   *   *   *

"Q: Now, Charles [Sprenkel], did you ever see him [relator] before he bought these things from you a week before you were robbed?

"A: Yes, I've seen him. (N.T., p. 21)

*   *   *   *   *   *

"A: No, no. I can tell you what I did say.

"Q: What is that?

"A: 'That looks like the man and I know it is him.'

"Q: You said, 'It looks like the man'?

"A: Yes. I knew him even before he came in. I knew him when he was a kid.

"Q: Are you sure this is the man?

"A: Sure, that's the man.

"Q: You identified him immediately.

"A: Yes, Sir.

"Q: There wasn't any question in your mind?

"A: Well, there is no question in my mind—when you *know* someone there is no question in your mind." (N.T., p. 30) [emphasis added].

Relator's *Wade-Gilbert* argument is without merit and he is entitled to no relief thereon.

■ Relator next raises a sufficiency of evidence argument as to his conviction on indictments 1209 and 1211. In his letter to attorney, Herbert Nelson (reproduced above, p. 1339 relator stated: "I do not care to appeal this case. I am satisfied with the manner in which the case was tried and with the jury's verdict." Relator withdrew his motions for a new trial.

While I am therefore not obligated to rule upon relator's contentions my reading of the record makes it clear that there is absolutely no merit to relator's claim.

■ As the United States Supreme Court noted in Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960): "[d]ecision of this question turns not on the sufficiency of the evidence, but on *whether this conviction rests upon any evidence at all.*" [emphasis added]

In *Thompson*, the Supreme Court found "no evidence whatever" and so reversed petitioner's conviction, but the record here presents ample evidence to support relator's conviction on indictments 1209 and 1211, and therefore his second contention must fail.

I have had the opportunity to review the entire state court record in the case of Commonwealth v. Walter Burgess, No. 185 of June Term, 1967 (indictments 1209 and 1211), including the 225 page transcript of the trial before the Honorable Judge Robert W. Honeyman with a jury and later sentencing (receipt of the State Court record is noted on the docket sheet for this matter.).

The operator of the victimized North Hills Tavern, Dorothy Caterisano, identified relator as having been in the tavern on the night of the holdup. (N.T., p. 16) This identification was verified by the tavern dishwasher, Mr. Worthington. (N.T., pp. 44 and 45) Patrolman Edwin G. Heubach of Upper Dublin Township

testified that he pulled the alleged getaway car over and identified Walter Burgess as its driver (N.T., p. 57). And there is much, much more in the record. The *Thompson* question, whether there is "any evidence at all" to support relator's conviction is readily answered: Yes, there is ample evidence to support relator's conviction.

■ Finally, relator raises the question of the voluntariness of his admission of guilt after the jury's verdict but before imposition of sentence, an admission which he contends was "based solely upon fear" and "meant an extremely lengthy sentence."

Let me first note that "the severity of a defendant's sentence alone constitutes no ground for relief." United States ex rel. Jackson v. Myers,[1] 374 F.2d 707, 711, footnote 11 (CCA 3, 1967); Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). Secondly, relator's guilt was fixed by a jury in the absence of any admission of guilt on his part.

Turning to relator's claim that his admission of guilt after the jury's verdict was involuntary and "based solely upon fear," I must conclude after a careful review of the transcript of sentencing that this is a frivolous charge, lacking in credibility. What does the transcript reveal?

"THE COURT: Did anybody make any promise to you as to what my sentence would be?

"THE DEFENDANT: No, Sir.

"THE COURT: Do you have any question at all about your rights in this matter?

"THE DEFENDANT: No, Sir.

"THE COURT: Do you have any question at all?

"THE DEFENDANT: *I would like to say something before sentence.*" (N. T., p. 4) [emphasis added].

Relator thus asked—and was not forced—to say something to the Court before sentencing. Relator was sworn and proceeded to testify, p. 7, ff. N.T. He *told of being mistakenly released from prison and voluntarily returning.* He pointed to the presence in the courtroom of two sisters, two nephews, and a friend—all interested in his case. And then the following exchange occurred with Mr. Nelson, relator's attorney, asking the questions:

"A: Now, do you want to say anything to his Honor about this trial"

"Q: I'm satisfied with everything.

"A: Well, let's take the first case in in which the jury found you guilty.

\*     \*     \*     \*     \*     \*

"Q: Now, what is your explanation of that? Did you do it or didn't [you] do it?

\*     \*     \*     \*     \*     \*

"A: I did do it." (N.T., p. 10)

"Q: So you are guilty of that, and you are admitting that and the jury found the correct verdict; is that right?

"A: Yes, Sir.

"Q: Then, the second one where this man kept an auction house or something—

"A: Yes, Sir.

"Q: Were you guilty of that?

"A: Yes, Sir.

\*     \*     \*     \*     \*     \*

"Q: Do you want to say anything else, while you have an opportunity?

\*     \*     \*     \*     \*     \*

"A: *I would just like to say that I did it.*" (N.T., p. 11) [emphasis added].

When given the opportunity to say anything else, anything he might desire, that was relator's statement. I fail to

---

1. In that case the sentencing judge mistakenly believed that he was dealing with a three-time offender and the Court of Appeals for the Third Circuit remanded to permit resentencing of relator.

see any trace of coercion. Relator's testimony continues, touching on his problems with drugs at some length.

"BY THE COURT:

"Q: Well, are you blaming being under the addiction of drugs for doing this?

"A: I am really blaming myself. (N.T., p. 15)

\* \* \* \* \* \*

"BY THE COURT:

"Q: Well, we will certainly *give you credit* for even at this point coming in and freely admitting your involvement." [emphasis added]

Rather than exposing himself to a more severe sentence, relator seems, by having admitted his guilt prior to sentence, to have gained "credit" from the sentencing judge. Judge Honeyman noted that relator could get a sentence that "would sound like twenty to forty years." And the Commonwealth "taking into account Mr. Burgess' candor now" recommended a five to ten year sentence. Judge Honeyman sentenced Burgess to concurrent two to ten year terms in the penitentiary. Stated the Judge: "I can tell you that what I heard here today is affecting my sentence *to your benefit*." (N.T., p. 25) As for relator, he announced: "I'm very pleased with the sentence." (N.T., p. 26) [emphasis added].

Relator's third claim is thus without merit. He seems not to have been coerced, but to have volunteered statements. His sentence seems not to have been more severe, but less. And he pronounced himself "very pleased with the sentence."

Although an evidentiary hearing before me in this matter may not have been called for, one was held. I found Mr. Burgess' testimony on this third point to lack credibility, and was persuaded instead by the testimony of his former attorney, Mr. Nelson, who said that relator's appearance on the stand and statements in response to questions "tended to mitigate the punishment and

get you a less severe sentence." I concur.

### ORDER

And now, this 22nd day of January, 1970, it is hereby ordered that relator's petition for writ of habeas corpus is denied.

There is no probable cause for appeal.